**BROWN KWON & LAM LLP**
William Brown, Esq. (WB6828)
275 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JEAN CHARLES QUARRATO, SAMMY QUARRATO, and KAWTAR SOUGRATI,**<br><br>**Plaintiffs,**<br><br>**- against -**<br><br>**MADISON GLOBAL LLC d/b/a NELLO, THOMAS MAKKOS, and MARCIA MAKSYMOWCZ**<br><br>**Defendants.** | **No:**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiffs JEAN CHARLES QUARRATO, SAMMY QUARRATO and KAWTAR SOUGRATI (collectively "Plaintiffs"), upon personal knowledge as to themselves, and upon information and belief as to other matters, by and through their undersigned attorneys, hereby file this Complaint against Defendants, MADISON GLOBAL LLC d/b/a Nello (hereinafter, "Nello" or "Corporate Defendant"), THOMAS MAKKOS and MARCIA MAKSYMOWCZ (collectively, "Individual Defendants," and together with Corporate Defendant, "Defendants") and allege as follows:

**INTRODUCTION**

1.      Plaintiffs bring this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, seeking from Defendants: (1) unpaid overtime wages due

1

to off the clock work (2) unlawfully retained tips, (3) liquidated damages, and (4) attorneys' fees and costs.

2.    Plaintiffs also bring this action pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq*., and Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, seeking from Defendants: (1) unpaid regular and overtime wages due to off the clock work (2) unpaid minimum wage due to invalid tip credit, (2) misappropriated tips, (3) liquidated damages for the late payment of wages (4) stautory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

4.    This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiffs*

**Jean Charles Quarrato**

6.    Plaintiff Jean Charles Quarrato is an adult who resides in New York County, New York.

7.    Plaintiff was a covered employee within the meaning of the FLSA and NYLL.

8.      Plaintiff retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

**Sammy Quarrato**

9.      Plaintiff Sammy Quarrato is an adult who resides in New York County, New York.

10.     Plaintiff was a covered employee within the meaning of the FLSA and NYLL.

11.     Plaintiff retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

**Kawtar Sougrati**

12.     Plaintiff Kawtar Sougrati is an adult who resides in New York County, New York.

13.     Plaintiff was a covered employee within the meaning of the FLSA and NYLL.

14.     Plaintiff retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

## *Defendants*

**Madison Global LLC**

15.     Corporate Defendant Madison Global LLC is a foreign limited liability company organized under the laws of the State of Delaware and authorized to conduct business in the State of New York, with a principal place of business located at 696 Madison Avenue, New York, NY 10065 and an address for service of process located at The LLC, 349 W. 37th Street, New York, N.Y. 10018.

16.     At all relevant times, Corporate Defendant Madison Global LLC has done business as "Nello."

17.     At all relevant times, Defendants operated Nello through Corporate Defendant Madison Global LLC.

18.     At all relevant times, Corporate Defendant Madison Global LLC had an annual dollar volume of sales in excess of $500,000.

19.     Corporate Defendant Madison Global LLC is a covered "employer" within the meaning of the FLSA and NYLL.

20.     Corporate Defendant Madison Global LLC employed the Plaintiffs.

21.     At all relevant times, Corporate Defendant Madison Global LLC maintained control, oversight, and direction over Plaintiffs, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

**Thomas Makkos**

22.     At all relevant times, Individual Defendant Thomas Makkos was an owner and General Manager of Nello.

23.     Individual Defendant Thomas Makkos is a covered "employer" within the meaning of the FLSA and NYLL.

24.     Individual Defendant Thomas Makkos employed Plaintiffs.

25.     At all relevant times, Individual Defendant Thomas Makkos was directly involved in managing the operations at Nello.

26.     At all relevant times, Individual Defendant Thomas Makkos had authority over personnel or payroll decisions and employment policies, practices and procedures at Nello.

27.     At all relevant times, Individual Defendant Thomas Makkos had the power to hire, fire, promote or discipline Plaintiffs and control the terms and conditions of their employment at Nello, including their work assignments, work schedules, pay and responsibilities.  Defendant Thomas Makkos directly hired Plaintiffs and informed them of their pay rate.  Plaintiffs were

directly supervised by Thomas Makkos on a day-to-day basis.  Thomas Makkos terminated Plaintiffs Sammy Quarrato and Jean Charles Quarrato's employment.

28.    At all relevant times, Individual Defendant Thomas Makkos hired, fired, promoted, disciplined, supervised, and controlled the employment terms and conditions of the managers and/or supervisors of Plaintiffs.

29.    At all relevant times, Individual Defendant Thomas Makkos had the power to prevent or stop any unlawful practices that harmed Plaintiffs.

30.    At all relevant times, Individual Defendant Thomas Makkos had the power to maintain employment records, including time and/or wage records of employees at Nello.

**Marcia Maksymowcz**

31.    At all relevant times, Individual Defendant Marcia Maksymowcz was an owner and manager for Nello.

32.    Individual Defendant Marcia Maksymowcz is a covered "employer" within the meaning of the FLSA and NYLL.

33.    Individual Defendant Marcia Maksymowcz employed Plaintiffs.

34.    At all relevant times, Individual Defendant Marcia Maksymowcz was directly involved in managing the operations at Nello.

35.    At all relevant times, Individual Defendant Marcia Maksymowcz had the power to hire, fire, promote or discipline Plaintiffs and control the terms and conditions of their employment at Nello, including their work assignments, work schedules, pay and responsibilities.  Defendant Marcia Maksymowcz directly hired Plaintiff Sougrati Kawtar.

36.    At all relevant times, Defendants jointly employed Plaintiffs.

37.    At all relevant times, each Defendants had substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

38.    At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

## STATEMENT OF FACTS

### *Plaintiff Jean Charles Quarrato*

39.    Plaintiff Jean Charles Quarrato was employed by Defendants as a floor manager and waiter at Nello, an Italian restaurant located at 696 Madison Avenue, New York, NY 10065 from on or around January 8, 2019 until the termination of his employment on August 8, 2022.

40.    From the start of his employment until around February 2021, Plaintiff worked primarily as a waiter, and occasionally as a floor manager.  From around February 2021, until the termination of his employment on August 8, 2022, Plaintiff worked exclusively as a waiter.

41.    As a floor manager, Plaintiff's primary duties included answering the phones to take orders, opening the restaurant, taking reservations, informing Defendant Makkos what food and supplies needed to be ordered, greeting customers, distributing tips from the tip pool, distributing paychecks to servers, closing the restaurant, and checking the restaurant for cleanliness.

42.    Throughout much of his employment, Plaintiff was paid an hourly rate of $10.00. However, during the pandemic, from around March 2020 through around June 2020, Plaintiff was paid a fixed weekly salary of $1,000, regardless of hours worked.  Plaintiff was at all times paid by check.  Starting in September 2020 until around February 2021, Defendants paid Plaintiff a fixed daily rate on days in which he worked as a floor manager.  Plaintiff was initially paid a daily rate of $250 for the first week he worked as a floor manager, and was paid $350 per day thereafter.

43.    From January 2019 until around March 2019, Plaintiff generally worked five shifts per week over five days, comprised of a mix of lunch and dinner shifts.  Lunch shifts were from 10:00 a.m. to 5:00 p.m. while dinner shifts were from 5:00 p.m. until closing which is between 11:00 p.m. and 2:00 a.m.  During this period, Plaintiff worked approximately 30-40 hours per week.

44.    From around March 2019 until March 2020, Plaintiff generally worked six shifts over six days, but occasionally worked a seventh day.  During this period, Plaintiff usually either worked a lunch shift or dinner shift.  However, on Sundays he would additionally work from 9:00 a.m. until 5:00 p.m., and occasionally from 9:00 a.m. until closing (10:00 p.m. on Sunday).  Plaintiff worked a double Sunday shift approximately four times during this period.  In total, Plaintiff worked approximately 35-45 hours per week.

45.    From March 2020 until around September 2020, during the pandemic, Plaintiff worked 7 days per week from 9:00 a.m. until 9:00 p.m., for a total of eighty-four (84) hours per week.  During this period, even when in-person dining was restricted, Plaintiff was required to work a full day setting up the stuffed bears, carpets, repairing tables, mopping, retrieving food, drinks and supplies for to-go orders, and taking to-go orders.  Plaintiff was also required to cook for the Individual Defendants each day.

46.    Furthermore, from March 2020 until around June 2020, Plaintiff was paid a fixed weekly salary of $1,000.  Despite working well over 40 hours per week, Defendants failed to pay Plaintiff any overtime premiums.

47.    From around September 2020 until around January 2021, Plaintiff worked seven days per week.  On Fridays, Saturdays, Sundays and Mondays, Plaintiff worked from 10:00 a.m.

until 9:00p.m. or 10:00p.m. On all other days Plaintiff worked a single shift, usually from 5:00

p.m. until 9:00 p.m. or 10:00 p.m. Plaintiff therefore worked a total of 56 to 63 hours per week.

48.    From around February 2021 until the termination of his employment, Plaintiff

worked six to seven days per week.  During this period, he generally worked five double shifts,

from 10:00 a.m. to closing, which was usually around 11:00 p.m., and one single shift from 10:00

a.m. to 5:00 p.m.  At least once per month Plaintiff worked a seventh day of either a single or

double shift.

49.    Throughout his employment, Plaintiff used a code to punch in and out.  However,

starting around March 2020, after his hours significantly increased, Defendants altered his time

records so that he was not paid for all overtime hours worked.  Specifically, a secretary employed

by Defendants, Kelly Young, would alter Plaintiff's hours by reducing them by about 20 hours per

week. Furthermore, for days in which Plaintiff was paid a fixed daily rate, he was instructed not

to clock in or out.

50.    At all relevant times, Defendants required Plaintiff to share his tips with members

of Nello's management team through a tip pooling system.  Tips were distributed to front of the

house employees based on a point system.  According to this system, bussers received 0.75

points, waiters received 1.25 points, kitchen waiters received 1 point.

51.    Throughout his employment, Defendants improperly retained Plaintiff's tips. At all

relevant times, general managers would share in the tip pool.  Specifically, a manager, John Simon

would receive 1.5 points from the tip pool despite not regularly serving customers.  Additionally,

when certain VIP customers visited the restaurant, they would leave tips of upwards of $500.  In

such situations, Defendants would retain the entire tip.  Furthermore, during the Covid-19

shutdown from March 2020 until around June 2020, Defendants retained all gratuities left by

customers.  On another occasion during the Summer of 2019 a large party left a 40% tip amounting to $1,600, Defendants improperly retained $800 of the $1600 tip.

52.    Defendants consistently failed to pay Plaintiff on a timely basis.  Defendants initially told Plaintiff that he was to be paid weekly, however, throughout Plaintiff's employment with Defendants each of his paychecks were late, usually by 3-4 weeks, and sometimes by as many as six weeks.  Furthermore, around five of Plaintiff's paychecks bounced, and Plaintiff incurred bank fees for two of those checks.

53.    Throughout Plaintiff's employment with Defendants, the New York State Minimum Wage Rate was $15.00 per hour.  At all relevant times, Defendants failed to pay Plaintiff the New York State minimum wage.  Furthermore, Defendants were not entitled to take a tip credit against Plaintiff's wages, as at all times Plaintiff spent more than 2 hours or 20% of his work time performing non-tipped work.  Defendants also failed to provide Plaintiff with the required tip credit notices pursuant to the NYLL.

54.    During his employment with Defendants, Plaintiff spent a minimum of two hours, or twenty percent (20%) of his work day performing non-tipped side work.  Specifically, Plaintiff was required to clean dishes, the bar, and the floors.  In addition, Plaintiff was required to clean the bathrooms and after March 2020 spent a considerable amount of time working in the kitchen as a cook.

### *Plaintiff Sammy Quarrato*

55.    Plaintiff Sammy Quarrato worked for Defendants as a coat check clerk and busser from on or around October 19, 2019 until around February 2020.  Plaintiff returned to Nello around June 2020 as a busser and continued working there until around September 2020.  Plaintiff again worked for Defendants as a busser from around October 2020 until around February 2021.

56.     During the first period of Plaintiff's employment, he predominantly worked as a coat check clerk, and as a busser.  During this period, <u>Defendants failed to pay Plaintiff any wages whatsoever</u>, and worked solely for coat check tips.  Plaintiff's coat check tips were generally minimal, and usually totaled about $20-$50 per night.  Furthermore, despite occasionally working as a busser, Plaintiff was not permitted to participate in the tip pool.  Thus, while Plaintiff worked as a busser, <u>he did not receive any compensation</u>.

57.     During his first period of employment from October 19, 2019, until around February 2020, Plaintiff worked four days per week, usually comprised of two double shifts, from 11:00 a.m. to closing, which was usually between 11:00 p.m. to 2:00 a.m., and two dinner shifts, from 5:00 p.m. to closing, for a total of approximately forty hours per week, though on some weeks where the restaurant closed late, Plaintiff would work in excess of forty hours per week.  58.     Plaintiff returned around June 2020 as a busser and continued working for about three months thereafter. Plaintiff worked four to five days per week, generally lunch shifts, from around 8:00 a.m. until 5:00 p.m. without any breaks. During this period, Plaintiff once again was not paid any wages.  Furthermore, Plaintiff was not permitted to participate in the tip pool, thus he worked for free.   Plaintiff complained on multiple occasions to the Individual Defendants who promised to pay him as a lump sum at the end of the summer, however, they failed to do so.

59.     Plaintiff returned about a month later in October 2020 based on promises by Defendants that he would be paid properly.  Instead, Plaintiff was paid $10.00 per hour, less than the New York State Minimum Wage Rate.  Furthermore, Plaintiff's wages were consistently two to three weeks late, and multiple pay checks bounced.

60.     During this period, Plaintiff generally worked a varied scheduled, 3-4 days per week, for a total of approximately 20 hours per week.

61.    Defendants were not entitled to take a tip credit against Plaintiff's wages.  Plaintiff spent well over 2 hours of 20% of his work day performing non-tipped side work, and Defendants failed to provide Plaintiff with the requisite tip credit notices.

62.    Specifically, Plaintiff was required to cut focaccia bread, fold napkins, carry ice, drinks and soda from the basement, set up tables and chairs in the morning, then flip tables and stack chairs at the end of the shift, clean the carpet, and set up the restaurant's stuffed bears, among other similar duties.

63.    Prior to around October 2020, Defendants completely failed to track Plaintiff's hours worked.  After October 2020, Plaintiff used a code to punch in and out.  However, on most days, after he punched out, Plaintiff was required to perform work, such as cleaning and carrying supplies to the basement.  During this period, Plaintiff performed about five to twenty minutes of off the clock work each work day.

### *Kawtar Sougrati*

64.    Plaintiff Kawtar Sougrati first started working for Defendants in or around November 2019, and continued working until around August 2022.

65.    Plaintiff was initially hired to design and put of Christmas decorations in the restaurant.  Very shortly after Plaintiff started working, Defendant Marcia Maksymowcz asked Plaintiff to stay on permanently to help clean and organize the restaurant as well as work as a housekeeper in the Individual Defendants' personal residence.

66.    Throughout her employment with Defendants, Plaintiff worked Mondays through Fridays and occasionally on Saturdays from 9:00 a.m. to 4:00 p.m.  Therefore, in weeks in which she worked a sixth day, Plaintiff worked well in excess of forty hours per week.  Plaintiff's daily work duties included, setting up the candles, cleaning the wax out of the candle holders, organizing

the restaurant's third-floor storage area, organizing the restaurant's studio area on the third floor and cleaning the Individual Defendants' Manhattan apartment.  Plaintiff was also required to cook for the Individual Defendants.

67.    When Plaintiff was first hired, she was promised a daily rate of $100, however, throughout her employment she was generally only paid approximately $100 per week in cash. Furthermore, in half of the weeks she worked for Defendants, Plaintiff was not paid any wages whatsoever.   Plaintiff was therefore at all times paid well less than the Federal and New York State Minimum Wage Rate.

68.    Throughout their employment with Defendants, Plaintiffs did not receive proper notices of pay rate or pay day from Defendants at hire or before the changes in pay, as required under the NYLL.

69.    Throughout their employment with Defendants, Plaintiffs did not receive proper wage statements from Defendants.  Furthermore, Plaintiff Kawtar Sougrati never received any paystubs.  Plaintiff Sammy Quarrato did not receive any paystubs prior to October 2020.

70.    Defendants failed to pay Plaintiff the lawful minimum wage due to an invalid tip credit deduction.

71.    Plaintiffs did not receive proper notice that Defendants were claiming a tip credit, nor received notice informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received.

72.    Defendants failed to provide proper wage statements informing Plaintiffs of the amount of tip credit taken for each pay period. In addition, the wage statements that Defendants provided to Plaintiffs failed to state the accurate amounts of tips earned by tipped employees.

73.     Defendants failed to track daily tips earned by Plaintiffs and failed to keep accurate records thereof.

74.     Plaintiffs were required to engage more than two (2) hours and/or twenty percent (20%) of their workdays performing non-tipped side work, including pre-shift side work and running side work.

75.     Defendants kept and/or allowed managers and supervisors to keep a portion of the tips that Plaintiffs earned from customers.

76.     Defendants knowingly and willfully operated their business with a policy of failing to pay the lawful minimum wage to Plaintiffs.

77.     Defendants knowingly and willfully operated their business with a policy of failing to pay all due overtime premiums for hours worked in excess of forty hours per week.

78.     Defendants knowingly and willfully operated their business with a policy of keeping a portion of the tips that Plaintiffs earned from customers and/or distributing a portion of the tips to managers, supervisors and other employees who are not entitled to receive tips under the FLSA and NYLL.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
### *Violation of the Fair Labor Standards Act*

79.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

80.     The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and FLSA Collective Members.

81.    Defendant failed to pay Plaintiff and FLSA Collective Members the federal minimum wage and overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

82.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants failed to inform Plaintiff and tipped FLSA Collective Members of the provisions of subsection 203(m) of the FLSA..

83.    Defendants unlawfully kept and/or allowed managerial or supervisory employees to keep a portion of tips that Plaintiff and tipped FLSA Collective Members earned from customers in violation of subsection 203(m) of the FLSA. See, 29 C.F.R. § 531.52.

84.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

85.    Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members the lawful minimum wage for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

86.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

87.    As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied overtime wages and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of

such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation

pursuant to the FLSA.

88.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA

Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members

should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by

appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then

seek leave of Court to amend this Complaint to set forth the precise amount due.

**SECOND CAUSE OF ACTION**
***Violations of the New York Labor Law***

89.    Plaintiff realleges and incorporates by reference all allegations in all preceding

paragraphs.

90.    At all times relevant, Plaintiff and the Class have been employees of Defendants,

and Defendants have been employers of Plaintiff and the Class within the meaning of the NYLL

§§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

91.    Defendants failed to pay Plaintiff and Class Members the minimum wage to which

they were entitled under the NYLL and the supporting New York State Department of Labor

Regulations.

92.    Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York

State Department of Labor Regulations, Defendants are required to pay Plaintiff and the Class the

full minimum wage at a rate of (a) $8.00 per hour for all hours worked from December 31, 2013

through December 30, 2014; (b) $8.75 per hour for all hours worked from December 31, 2014

through December 30, 2015; and (c) $9.00 per hour for all hours worked from December 31, 2015

through December 30, 2016; (d) $11.00 per hour for all hours worked from December 31, 2016

through December 30, 2017; (e) $13.00 per hour for all hours worked from December 31, 2017

through December 30, 2018; and (f) $15.00 per hour for all hours worked from December 31, 2018 through the present.

93.　　Defendants have failed to provide adequate notification to Plaintiff and Class Members of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

94.　　Defendants required Plaintiff and Class Members to perform a substantial amount of non-tipped side work in excess of two (2) hours or twenty percent (20%) of their workdays.

95.　　Defendants unlawfully retained and/or allowed managerial or supervisory employees to keep a part of the gratuities received by Plaintiff and Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

96.　　Pursuant to the NYLL, § 191(a)(i), and the supporting New York State Department of Labor Regulations, manual workers shall be paid weekly and not later than seven calendar days after the end of the week in which wages are earned.

97.　　Plaintiff and Class Members spent well over 25% of their working time engaged in physical labor, and were at all times "manual workers," as defined by the NYLL.

98.　　At all relevant times Defendants failed to pay Plaintiff and Class Members on a weekly basis.

99.　　Defendants failed to furnish Plaintiff and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address

16

of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

100.   Defendants failed to furnish Plaintiff and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

101.   Defendants failed to keep, make, preserve, maintain, and furnish accurate records of the amounts of tips earned by Plaintiff and Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

102.   Defendants failed to properly disclose or apprise Plaintiff and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

103.   As a result of Defendants' willful violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendants their unpaid minimum wage, misappropriated tips, liquidated damages, statutory penalties, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Members and the Class, respectfully requests that this Court grant the following relief:

a.  Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b.  Certification of this case as a class action pursuant to Rule 23;

c.  Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

d.  An award of unpaid overtime wages due under the FLSA and NYLL;

e.  An award of unpaid minimum wage due under the FLSA and NYLL;

f.  An award of unlawfully retained tips due under the FLSA and NYLL;

g.  An award of liquidated damages for the late payment of wages under the NYLL;

h.  An award of liquidated damages as a result of Defendants' willful failure to pay minimum wage and misappropriated tips, pursuant to the FLSA or NYLL;

i.  Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage notices, as required by the NYLL;

j.  Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage statements, as required by the NYLL;

k.  An order awarding relief for Defendants' retaliation, including but not limited to lost compensation, under the FLSA and NYLL;

l.  Pre-judgment and post-judgment interest;

m.  Reasonable attorneys' fees and costs of this action;

n.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

o.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law,

from engaging in each of the unlawful practices, policies and patterns set forth herein; and

p. Such other and further relief as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  June 27, 2023                    Respectfully submitted,

**BROWN, KWON & LAM LLP**

By:    */s/ William Brown*

William Brown, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5825
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiffs*

## <u>CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT</u>

I, JEAN CHARLES QUARRATO hereby consent to be a party plaintiff pursuant to 29 U.S.C. §

216(b), in an action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against

MADISON GLOBAL LLC d/b/a NELLO, THOMAS MAKKOS, and MARCIA

MAKSTMOWCZ and/or related entities and individuals to recover unpaid wages, liquidated

damages, and other damages and relief available under the Fair Labor Standards Act.

DocuSigned by:

_____
CAC823A02CGD414...

Name: JEAN CHARLES QUARRATO

Date: _____
           6/23/2023

DocuSign Envelope ID: 4440BC0B-A31B-40B6-8667-0912A88CDA3

## **CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT**

I, KAWTAR SOUGRATI hereby consent to be a party plaintiff pursuant to 29 U.S.C. § 216(b), in an action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against MADISON GLOBAL LLC d/b/a NELLO, THOMAS MAKKOS, and MARCIA MAKSTMOWCZ and/or related entities and individuals to recover unpaid wages, liquidated damages, and other damages and relief available under the Fair Labor Standards Act.

DocuSigned by:

_____
7BAF3C5801E241C...

Name: KAWTAR SOUGRATI

6/24/2023

Date: _____

## <u>CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT</u>

I, SAMMY QUARRATO hereby consent to be a party plaintiff pursuant to 29 U.S.C. § 216(b), in

an action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against MADISON

GLOBAL LLC d/b/a NELLO, THOMAS MAKKOS, and MARCIA MAKSTMOWCZ and/or

related entities and individuals to recover unpaid wages, liquidated damages, and other damages

and relief available under the Fair Labor Standards Act.


DocuSigned by:

_____
8770383820564DE

Name: SAMMY QUARRATO


6/24/2023

Date: _____